York City Department of Education; and may be served with process by serving a copy of the summons and complaint to Michael A. Cardozo, 100 Church Street, Room 2-140, New York, NY 10007.

**Lucille Amerdi**, hereinafter called "Amerdi". Personally and individually; and in his official capacity as an employee of the New York City Department of Education; and may be served with process by serving a copy of the summons and complaint to Michael A. Cardozo, 100 Church Street, Room 2-140, New York, NY 10007.

**Jeff Huart**, hereinafter called "Huart". Personally and individually; and in his official capacity as an employee of the United Federation of Teachers; and may served with process by serving a copy of the summons and complaint at 52 Broadway, 9th Floor, New York, NY 10004.

**Evelyn De Jesus**, hereinafter called "De Jesus". Personally and individually; and in his official capacity as an employee of the United Federation of Teachers; and may served with process by serving a copy of the summons and complaint at 52 Broadway, 9th Floor, New York, NY 10004.

**Wilma Velazquez**, hereinafter called "Velazquez". Personally and individually; and in his official capacity as an employee of the United Federation of Teachers; and may served with process by serving a copy of the summons and complaint at 52 Broadway, 9th Floor, New York, NY 10004.

**Angel Valentin**, hereinafter called "Valentin". Personally and individually; and in his official capacity as an employee of the United Federation of Teachers; and may served with process by serving a copy of the summons and complaint at 52 Broadway, 9th Floor, New York, NY 10004.

# PRELIMINARY STATEMENT

1. I respectfully summit this case and hereby I allege that I have been unlawfully discriminated by the Defendant".

2. The Defendant terminated based on Problems with Immigration and my immigration status has never lapsed since I was hired by the Defendant to the present.

3. The Defendant placed and maintained in my file an incorrect notation that my employment was terminated because of Immigration Problems, and repeatedly refused to change the notation each time I brought in my valid immigration documents, such as Employment Authorization Card ("EAC") and Permanent Resident Card as well.

4. In addition the Defendant placed me in the Defendant's Immigration Ineligibility Blacklist, which prevented me from obtaining employment with the Defendant, and elsewhere, because of the stigmatizing label.

5. On April 2007, the Defendant changed the personnel file notation from DIM, which means *Immigration Problem* to DQS, which means *fail to meet state requirements for*.

6. Almost a year after first being notified of that mistreatment to me and only after that the Defendant found out that I filed a complaint with the U.S. Department of Justice, Office of Special Counsel for Unfair Immigration-Related Employment Practices. Since that time the Defendant changed the Code in my file in some programs, but in other internal's program the code was changed three months after approximately, but anyway the Defendant continued to deny me full time employment.

7. Furthermore the Defendant stated that my Permanent Resident Card is not a valid proof of legal status in The United States.

8. Also the Defendant repeatedly, a lot of times, suggested me to go back to my home country.

9. Moreover the Defendant stated that I won't ever be rehired by the Defendant.

# I SUE THE DEFENDANT BASED ON

   a) National Origin Discrimination;

   b) Citizenship Status Discrimination;

   c) Retaliation for Assenting Rights Protected Under 8 U.S.C §1324b;

   d) Deceive or willfully obstruct anyone from competing for employment;

3

x) Defamation;

y) Negligence; and

z) Unpaid Wages.

## Relief

Wherefore, I, the plaintiff, pray that this Court grant such relief as may be appropriate, including injunctive orders, damages, and cost as follows: in the amount of at last US$10,000,000 (ten million dollars), for all of the charges mentioned above.

## I SUE THE CITY BASED ON

a) National Origin Discrimination;

b) Citizenship Status Discrimination;

c) Retaliation for Assenting Rights Protected Under 8 U.S.C §1324b;

d) Violating the Title VII 42 U.S.C § 2000e(b);

e) Deceive or willfully obstruct anyone from competing for employment;

f) Give an unauthorized preference or advantage to anyone so as to improve or injure the employment prospects of any particular employee or applicant;

g) Take, fail to take, or threaten to take or fail to take a personnel action against an employee or applicant for exercising an appeal, complaint, or grievance right; testifying for or assisting another in exercising such a right; cooperating with or disclosing information to the Special Counsel or to an Inspector General; or refusing to obey an order that would require the individual to violate a law;

h) Take or fail to take a personnel action, if taking or failing to take action would violate any law, rule or regulation implementing or directly concerning merit system principles at 5 U.S.C. § 2301;

i) Document Abuse;

j) Abuse of Authority;

k) Mismanagement;

e) Give an unauthorized preference or advantage to anyone so as to improve or injure the employment prospects of any particular employee or applicant;

f) Take, fail to take, or threaten to take or fail to take a personnel action against an employee or applicant for exercising an appeal, complaint, or grievance right; testifying for or assisting another in exercising such a right; cooperating with or disclosing information to the Special Counsel or to an Inspector General; or refusing to obey an order that would require the individual to violate a law;

g) Take or fail to take a personnel action, if taking or failing to take action would violate any law, rule or regulation implementing or directly concerning merit system principles at 5 U.S.C. § 2301;

h) Violating the Title VII 42 U.S.C § 2000e(b);

i) Document Abuse;

j) Abuse of Authority;

k) Mismanagement;

l) Wrongful Job Termination;

m) Intentional Wrongful Job Termination;

n) Injures and Emotional Damages;

o) Intentional Emotional Damages;

p) Punitive Damages;

q) Retaliation;

r) Job Discrimination;

s) Unfair Labor Practice;

t) Unfair Employment Practice;

u) Withholding Documentation from Employee or Ex-employee;

v) Influence anyone to withdraw from competition for any position so as to improve or injure the employment prospects of any other person;

w) Engage in reprisal for whistle blowing;

l)  Intentional Wrongful Job Termination;

m) Injures and Emotional Damages;

n)  Intentional Emotional Damages;

o)  Punitive Damages;

p)  Retaliation;

q)  Job Discrimination;

r)  Unfair Labor Practice;

s)  Unfair Employment Practice;

t)  Influence anyone to withdraw from competition for any position so as to improve or injure the employment prospects of any other person;

u)  Engage in reprisal for whistle blowing;

v)  Defamation; and

w) Negligence.

## Relief

Wherefore, I, the plaintiff, pray that this Court grant such relief as may be appropriate, including injunctive orders, damages, and cost as follows: in the amount of at last US$5,000,000 (five million dollars), for all of the charges mentioned above.

## I SUE THE UNION BASED ON

a)  National Origin Discrimination;

b)  Citizenship Status Discrimination;

c)  Retaliation for Assenting Rights Protected Under 8 U.S.C §1324b;

d)  Violating the Title VII 42 U.S.C § 2000e(b);

e)  Deceive or willfully obstruct anyone from competing for employment;

f)  Give an unauthorized preference or advantage to anyone so as to improve or injure the employment prospects of any particular employee or applicant;

g) Take, fail to take, or threaten to take or fail to take a personnel action against an employee or applicant for exercising an appeal, complaint, or grievance right; testifying for or assisting another in exercising such a right; cooperating with or disclosing information to the Special Counsel or to an Inspector General; or refusing to obey an order that would require the individual to violate a law;

h) Take or fail to take a personnel action, if taking or failing to take action would violate any law, rule or regulation implementing or directly concerning merit system principles at 5 U.S.C. § 2301;

i) Document Abuse;

j) Abuse of Authority;

k) Mismanagement;

l) Injures and Emotional Damages;

m) Intentional Emotional Damages;

n) Punitive Damages;

o) Retaliation;

p) Job Discrimination;

q) Unfair Labor Practice;

r) Unfair Employment Practice;

s) Influence anyone to withdraw from competition for any position so as to improve or injure the employment prospects of any other person;

t) Engage in reprisal for whistle blowing;

u) Defamation;

v) Negligence;

w) Fair to represent me;

a) Unfair Practices; and

b) Misstatement.

# Relief

Wherefore, I, the plaintiff, pray that this Court grant such relief as may be appropriate, including injunctive orders, damages, and cost as follows: in the amount of at last US$3,000,000 (three million dollars), for all of the charges mentioned above.

## I SUE PERSONAL AND INDIVIDUALLY; AND IN THEIR OFFICIAL CAPACITY AS EMPLOYEES OF THE UNION AND/OR THE DEFENDANT LAWRENCE, IANNIELLO, AMERDI, HUART, DE JESUS, VELAZQUEZ AND VALENTIN BASED ON

a) National Origin Discrimination;

b) Citizenship Status Discrimination;

c) Retaliation for Assenting Rights Protected Under 8 U.S.C §1324b;

d) Violating the Title VII 42 U.S.C § 2000e(b);

e) Deceive or willfully obstruct anyone from competing for employment;

f) Give an unauthorized preference or advantage to anyone so as to improve or injure the employment prospects of any particular employee or applicant;

g) Take, fail to take, or threaten to take or fail to take a personnel action against an employee or applicant for exercising an appeal, complaint, or grievance right; testifying for or assisting another in exercising such a right; cooperating with or disclosing information to the Special Counsel or to an Inspector General; or refusing to obey an order that would require the individual to violate a law;

h) Take or fail to take a personnel action, if taking or failing to take action would violate any law, rule or regulation implementing or directly concerning merit system principles at 5 U.S.C. § 2301;

i) Abuse of Authority;

j) Mismanagement;

k) Injures and Emotional Damages;

l) Intentional Emotional Damages;

m) Punitive Damages;

n) Job Discrimination;

x) Unfair Labor Practice;

y) Unfair Employment Practice;

o) Withholding Documentation from Employee or Ex-employee;

p) Influence anyone to withdraw from competition for any position so as to improve or injure the employment prospects of any other person;

q) Engage in reprisal for whistle blowing;

r) Defamation; and

s) Negligence.

## Relief

Wherefore, I, the plaintiff, pray that this Court grant such relief as may be appropriate, including injunctive orders, damages, and cost as follows: in the amount of at last US$500,000 (five hundred thousand dollars), each Defendant individually, for all of the charges mentioned above.

## STATEMENT OF THE CASE

1. On or around November of 2002, I started the process to teach with the Defendant. On April 14th, 2003 I began working full time for the Defendant as a Mathematics Teacher, at Inwood Intermediate School (I.S. 52), District 6, Region 10 (*Exhibit* A-1). I was license as a Math Teacher through the New York State Department of Education ("NYSEDU") for the school year 2002-2003 (*Exhibit* A-2).

2. I was hired by the Defendant, base on that I met the requirements to teach Math and I had an Employment Authorization Card ("EAC"), pursuant to my adjustment of status application, valid from June 21th 2002 to February 20th, 2003 and another valid from March 3rd, 2003 to March 2nd, 2004 (*Exhibit* A-3). My adjustment of status was based on an I-130 petition filed on my behalf from wife.

3. On May 28th, 2003 the Defendant applied for a H1B Visa for me. When the Defendant started the process they knew that I have an adjustment of status pending, and the Defendant mentioned it in the Addendum of the Form-129 (*Exhibit* A-4). Also the

Defendant stated, in the same exhibit, intentionally, that I was in exclusion or deportation proceedings, when I never been in that status.

4. I was issued from the U.S. Department of Labor a Certification as Secondary Teacher, (*Exhibit* A-5) I received an approval notice demonstrating that the H1B Visa was valid from August 12th, 2003 to August 3rd, 2006 (*Exhibit* A-6).

5. On July 14th, 2003 I became divorced from my first wife. Therefore I stopped my adjustment of status application based on that marriage, the reason was because Ms. Mirna Masa, whose works at the Defendant's International Recruitment Department, stated that I can't have two petitions in the same time, and that I have to choose between the adjustment of status based on wife's petition or the H1B visa from the Defendant, and if I decide to choose the H1B Visa I have to cancel the petition from my wife. Later on I found out that what the Defendant told me was incorrect because it's very possible to have two or more different petitions at the same time within USCIS. But that was a strategy from the Defendant in order to have me in their hands, in terms of Immigrations.

6. I continued working for the Defendant as a Math Teacher under the H1B Visa for the school years 2003/2004, 2004/2005 and 2005/2006. The Defendant issued to me a Math License for the school year 2003/2004, (*Exhibit* A-7) but the license(s) for the school years 2004/2005 and 2005/2006 the Defendant never applied that for me, and I couldn't apply by my own because the Defendant was the responsible for each license application and H1B Visa as well. At the beginning of 2006 the Defendant prepared and submitted to USCIS for me the second H1B Visa package application valid from 2006 to 2009 (*Exhibit* A-8).

7. On May of 2006, I contacted USCIS and I was told by USCIS that the second H1B visa was approved for 3 more years and by those days the Defendant stated that they (the Defendant) couldn't process the second H1B visa approval because I didn't complete the license requirement, but USCIS mailed the visa approval to the Defendant lawyers to: McCandlish Holton, PC. Helen L. Konrad, Immigration Attorney; Jennifer A. Williams, Immigration Paralegal, located at 1111 East Main Street, Suite 1500, Richmond, VA 23219. Phones: (804) 775-3825 and (804) 775-3811; Fax: (804) 249-9595.

> NOTE: By 2003 Ms. Helen L. Konrad, Esquire, was located at: Reed Smith LLP, 901 E. Byrd Street, Suite 1700, Richmond, VA 23219.
> Phone: (804) 344-3411; Fax: (804) 334-3410 (*Exhibit* A-9).

8. On February 2006 I married again, and applied for adjustment of status based on my marriage. On May 2006 I received an EAC, pursuant to my adjustment of status application, (*Exhibit* A-10) valid from May 25, 2006 to May 24, 2007.

9. On May 5th, 2006 I received a letter from the Defendant, informing me that if I don't met the requirements for the permanent certification I will be terminated and I will be removed from payroll after June 30th, 2006 (*Exhibit* A-11). On May 16th, 2006 I received another letter from the Defendant, informing basically the same that I was informed on May 5th (*Exhibit* A-12). On May 18th, 2006 the Defendant send me another letter stating that I will be terminated by the Defendant in July 31st, 2006 if I don't complete the license requirement, and that the Defendant will notify INS (*Exhibit* A-13). In all of those letters the Defendant stated and maintained the same at all time, that I will be terminated because of the certification no because of problems with immigration.

10. On May, 2006 I informed Ms. Mirna Masa, whose works for the Defendant at the International Recruitment Department, that I have an EAC valid from May 25th, 2006 to May 24th 2007. On that moment Ms. Masa asked me very annoy how did I get the EAC? And she stated that I'm not supposed to have an EAC. I explained to Ms. Masa that the EAC I obtained by my Adjustment of Status based on my marriage, she asked me to wait for her in the waiting area, and when she returned accompanied by my case manager Mr. Samuel Cheung, whose work in the same division. Both Ms. Masa and Mr. Cheung were reluctant to accept my EAC and I explained them that my EAC has nothing to do with the H1B Visa. After a very long conversation they copied my EAC promising me that my file will be updated accordingly, but they never did anything, in fact they didn't even filed my EAC in my file.

11. On June of 2006, I received a second notice, from the Defendant, informing me that my H1B Visa Sponsorship was being cancelled and that I would be terminated. On that time the Defendant could terminated me, but the H1B1 Visa continue active and valid until August 03, 2006. I went immediately to the Defendant to inquire about the situation and again I explained to Ms. Masa and Mr. Cheung, that I have an EAC and that I can work in another position within the Defendant even though I'm not licensed in Math, because I'm allow to work legally in the U.S. Both of them went to the back of their office, while I was waiting in the waiting area. After a very long time, they came back stating that it was a

mistake and that they would fix the problem. One's again it was the same, they didn't updated my file and they didn't do nothing. What they really were doing was gaining time.

12. On July 7th, 2006, Becker, the Defendant's Senior Deputy Executive Director, Division of Human Resources, supposedly mailed me a letter stating that on July 7th, 2006, I was placed in the Defendant Ineligible/Inquiry List. That directive has been placed at the request of the Office of Recruitment, International-Immigration Related Issues (*Exhibit* A-14). I never received that letter on the mail. The reason why I have that letter with me is because I found it on my file in the Defendant's HR at the Headquarter (65 Court St) and I could get a copy of it.

13. Assuming that all was in order, approximately on or about July or August, 2006 I registered on line within the Defendant's system for future job opportunities, because I was expecting for a license from the NYSEDU as School Attendance Teacher, and I was issue an EAC as well. In spite of the fact that I registered on or about July or August, 2006, strangely I received the email confirmation a few months later I received an email confirmation from the Defendant on October 26th; another one on November 15th and the last one on December 15th, 2006 (*Exhibit* A-15).

14. Due to the fact that the Defendant never send me the final termination letter; and I provided my EAC to the Defendant's personnel, around early July, 2006 I received a call from the supervisor for the Regional Operation Center ("ROC"), Mr. Allan Weinstein, informing that he wanted to hire me for an open summer school position; I accepted it and began working at Mirabal Sisters Intermediate School (I.S. 90), District 6, Region 10. After a month of working at I.S. 90, I didn't received any paycheck and I spoke to the payroll secretary at I.S. 90 and she told me that there were problems with processing my paycheck and she does not understand why the paycheck was rejecting and each time she tries to process the paycheck it's rejects with a code that means Immigration Problem. The payroll told me to go to the ROC to resolve this problem and that I need to fix that problem before I could continue working. I spoke to Mr. Allan Weinstein at Region 10 and he told me that I need to talk to someone at the Defendant HR Headquarter to resolve the problem.

15. I did even get pay by that time and during July and August 2006, I spend weeks going among I.S 90, Region 10, the Defendant (65 Court St.) and the Union. By that time the UFT refused to assist me. The UFT just suggested me to find a lawyer or deal with the case by myself, because the UFT does not deal with Immigration issues, but I told and prove to

the UFT that I have no issue with USCIS, the real problem was the Defendant that refused to accept my legal status in the US as valid, and anyway the UFT has refused to assist me, since that time to present.

16. On July 2006, I went to the Defendant HR Headquarter and I spoke to Amerdi, the assistant for Ianniello, the Director of the Office of Defendant HR. Amerdi stated that I been terminated because of problems with my immigration status and my file was labeled with a Code indicating that I had been fired because of problems with immigration. In addition during the same conversation Amerdi stated that I have to return to my home country and that the Defendant won't pay for my air ticket.

17. I explained, informed and proved by showing to the Defendant's International Recruitment Department staff especially to Amerdi, Ms. Masa and Mr. Cheung that I don't have any problem with immigration at all, and recall them that on May 2006, they copied my EAC promising me that my file will be updated accordingly. Also when I showed again, to Amerdi my EAC she didn't even wanted to see it and Ms. Masa and Mr. Cheung on that moment acted like that they didn't even know about the existence of my EAC and both of them denied that they received an EAC from me with the purpose of to make copy and file it.

18. In addition, I showed in person to Backer and his assistant a lady named Dayana my EAC and I explained them that I have a pending adjustment of status application with USCIS, but all was in vain. No matter what I did during July and August 2006, the Defendant's personnel never accepted my EAC status even though on May they supposedly made a copy my EAC for updating my file and like I said before, they never did nothing in fact they didn't even filed it in my folder and they denied that they received an EAC from me.

19. I tried in different divisions within the Defendant and wherever I went, the Defendant staff stated the same: Ianniello was the one that placed the Immigration Code on the Defendant's system, and he was the only one that has the power to remove it. Due to the fact that I tried to speak to Ianniello and he always refused to talk and/or met with me. So I decide to speak again with Ms. Mina Masa in person at the Defendant HR Headquarter and I asked her please to allow me to talk to Ianniello in order to see if he pitied to remove the Immigration Code that he placed on my file. Ms. Masa told me to wait for her in the waiting area of the International Recruitment office and she went to see Ianniello in his office. When Ms. Masa came back, she stated that Ianniello was very angry and, that she tried to help me, but

when she approached to Ianniello and talked to him about my case, he started yelling on her and told her that he won't change the Immigration Code no matter what. Ms. Masa also stated that there was nothing else that she can do for me, and she won't try again because she knows her temper and the way that Ianniello yelled on her if he does the same again, she does not guarantee how she will responds him, because she has a big mouth too.

20. During July and August 2006 I continued persistently trying to see if the Defendant pities remove the Immigration Code in my file, and there were no way that Ianniello agreed to remove the Code on the Defendant's system. Also I continued requesting help from the Union and they refused to assist me.

21. Also I went in person to the Equal Employment Opportunity & Diversity Management of the Defendant, located at 65 Court Street, and that division refused to assist me as well.

22. On August 6th, 2006, finally, I had the chance to meet with Becker in his office, in an informal meeting, he wasn't expecting for me. Due to that Mr. Becker is over Ianniello I tried to convince Becker to remove the Code or to order Ianniello to remove it, and what he told me was to give him my number phone and he'll give me a call, I asked him for his business card, to ensure that I had his contact information. Becker never called me and never removed the code and or ordered to remove the Code on my file in the Defendant's system. In addition Becker never accepted my EAC as a valid proof of legal status in the United States.

23. Again I contacted UFT, to see if they can try to help me to convince the Defendant remove the Code, and again the UFT refused to help me.

24. On August 17th, 2006 I obtained a Permanent Resident Card (*Exhibit* A-16), valid from August 17th, 2006 until August 17th, 2008. On May 12th, 2008 my Permanent Resident Card was extended for a period of one year, (*Exhibit* A-17). On April 3rd, 2009 I received a Permanent Resident Card valid until April, 2019, (*Exhibit* A-18). The Exhibit A-19 details all my Visas and/or Legal Status in The United States, since June 16, 2001 to 2010. Upon obtaining a Permanent Resident Card in August 2006, I went back to the Defendant, Office of International Recruitment to try that the Defendant remove the Code placed on my file, but it was impossible for me to convince Defendant's staff to remove the immigration Code from my file even though I had a Permanent Resident Card in my hands. By that time the Defendant staff were upset with me because I continued with the same history and the

Defendant's staff didn't even wanted to see me no more neither my Permanent Resident Card.

25. I went to the Defendant Fingerprint Verification Unit, located in the Defendant HR Headquarter, first floor, and the supervisor of that division, Ms. Ruth Richardson, she updated in the Defendant's system my legal status valid until August 17th, 2008 but the Immigration Code, in red, stayed in the Defendant's system even though Ms. Richardson extended my legal status in the system, it was impossible for her to delete the Immigration Code, in red, located on top of the screen (*Exhibit* A-20), because she does not have the power to remove it and she stated that the only person that can remove the code was Ianniello or Becker. Ms. Richardson's phone number is (718) 935-4000 Ext. 2115.

26. Again I went to the UFT, to see if they can try to help me to convince the Defendant remove the Code, and again the UFT refused to help me.

27. On or around August of 2006, I applied for a Substitute Teaching License. I was told that I would receive it within ten days and I never received the license. I went back on September to the Defendant to inquire about the Substitute Teaching License and repeatedly for approximately 3 times I was told that I would receive the license within ten days and again I never received the substitute license. Finally on January 2007, the Substitute License Division staff found that there was a block in my file within the Defendant's system and for that reason the Defendant's system couldn't processed anything for me because of the Immigration Code placed on my file. I personally showed to that Division staff my Permanent Resident Card, but the employees of that division refused to accept any proof of my legal status and they stated that there were nothing they could do for me and that I needed to talk to Human Resources.

28. On September 1st, 2006 the NYSEDU, issued for me a Certification as School Attendance Teacher valid from September 1st, 2006 to August 31st, 2011 (*Exhibit* A-21).

29. Upon obtaining my Permanent Resident Card and the NYSEDU Certification as School Attendance Teacher, late on August and/or early September 2006, I went again to the UFT to ask for help to see if the Union can help at this time because now I'm Permanent Resident and the Code continues in the Defendant's system, the UFT representative called the Defendant but the union couldn't do anything on that time. In addition at the UFT office I mentioned some of the Defendant's staffs that were involved in this issue and/or knew about the case, and one of them was Ms. Mirna Masa. When the UFT contacted by

phone the Defendant, a few minutes later Ms. Masa called me at my cell phone (718) 757-7685 and told me in Spanish:

### ORIGINAL

*José sácame de ese problema, que aquí acaba de llamar la Unión, y mencionaron mi nombre y tú no puedes meterme en ese problema porque lo único que yo he hecho es ayudarte y tú lo sabes, así es que a mí ni me mencione en ese problema, porque lo único que yo he hecho es ayudarte y tu bien que lo sabes, so dile a la unión que yo no tengo nada que ver con esa situación.*

### TRANSLATION

*Jose exclude me from that problem, the union just called here and they mentioned my name and I don't want you to get me in that problem because what I've done for you it's to help you a lot and you know that, so don't even mention me in that problem, because I just helped you a lot and you know that, so tell the union that I have nothing to do with that situation.*

I explained to Ms. Masa that I mentioned her name as reference and that I told the Union that she was not responsible for what was happening to me, and I appreciated all that she tried for me.

30. During September, 2006 I continued trying to see if the Defendant, particularly Ianniello and/or Becker could remove the Immigration Code from my file in the Defendant's system, but I didn't even get the chance to talk to none of them.

31. Again I went to the Defendant accompanied by Ms. Criceida Vanderhorst, and again I asked Ms. Masa to inquire about my issue, on that moment Ms. Masa didn't want to talk to me about anything because according to her, she didn't want to get in problems. After a few minutes of conversation Ms. Masa accepted to go to Ianiello's office and to talk to

him. When Ms. Masa came back from Ianiello's office Ms. Masa stated that Ianiello stated that my Permanent Resident Card is not a valid proof of legal status in the United States and that Ianiello won't remove the code on my file no matter what. Furthermore the Defendant stated that they won't remove the Code from their system to make sure that I don't get hired within the Defendant in any position, and the only way that the Defendant could remove the Immigration Code from their system it's if I complete the Math Certification.

32. Moreover a lady, named Evelyn that by those days worked at the reception of the Defendant's International Recruitment Department, she suggested me to sue the Defendant because that wasn't the first time that Ianiello did that to employee, and that Ianiello is very racist with the Hispanics.

33. Due the fact that Ianiello stated that my Permanent Resident Card is not a valid proof of legal status in the U.S., at the end of September 2006 I contacted USCIS and explained them that the Defendant was stating that my Permanent Resident Card was not a valid proof of legal status in the U.S. I decided to contact USCIS and I asked USCIS if they had or if there was a form or a letter for that case to prove my legal status in US. The USCIS's answer was that if the Defendant was stating that I have problem with immigration, they need to show me the letter from USCIS stating which the problem is, if they don't have that letter from USCIS, so there was no problem. Also I was told by USCIS that the best proof of legality that I have is my Permanent Resident Card and I didn't need any additional document and the Defendant was mandated to accept it.

34. On October 2006, Ianiello continued refusing to see me and to remove the Immigration Code from the Defendant's system. On October 3rd, 2006, the Defendant issues a letter stating the reason of my termination with the Defendant. The letter stated that I was terminated because of Immigration (*Exhibit* A-22).

35. On October 17th, 2006 I spoke again to the assistant for Backer, a lady named Dayana, and thanks to that lady I could talked and show in person to Becker my Permanent Resident Card and Becker ordered Ianiello to remove the Immigration Code from the Defendant's system. A few days later, I received a letter stating that as of October 17th, 2006; I was removed from the Defendant's Ineligible/Inquiry list (*Exhibit* A-23).

36. On November 1st, 2006 just to make sure that my situation was in order, I requested a letter from the Defendant (*Exhibit* A-24), and according to the letter supposedly everything was

in order, so I started searching for open Attendance Teacher position within the Defendant. In October and November of 2006.

37. Approximately by the middle of November, 2006, I hear about an open position as a School Teacher Attendance at the Region 10 in Manhattan and I applied immediately. Ms. Nancy Miller, The Attendance Teacher Supervisor for the Region 10 told me that she needed two Attendance Teachers and that she wanted to hire me, but when she pulled my file in the Defendant's system, contained an Immigration Code indicating that I had been fired from the Defendant because of problems with Immigration. I informed and showed Ms. Miller my Permanent Resident Card which made me eligible to work legally in the United States. Ms. Miller stated that no matter that I have a Permanent Resident Card; I could not be hired until the Immigration Code got removed from my file.

> NOTE: Due to the fact that the Defendant is a huge institution and have many locations and division, Ms. Miller ignored the existence of the Code on my file and she has nothing to do with that Immigration Code, because she works for the Region 10, located at 333 7$^{th}$Avenue, New York, NY 10001 and the Defendant Human Resources it's located at the Defendant Headquarter, located at 65 Court Street, Brooklyn, NY 11201.
>
> At the Defendant HR Headquarter was where all of my issues were taking place and Ianiello and Becker were located with their respective under division's supervision.
>
> The only connection between Mr. Miller and the Defendant HR Headquarter was the system. For that reason the Immigration Code was placed in my file, just to make sure that nobody within the Defendant could hired me.
>
> I made this remark to clarify that the Defendant was not trying to help by a side and on the other hand they were not, if not that the only person and the only department that has the power to place and or remove the Immigration Problems Code in my file was Ianiello, Director of the Office of Recruitment Selection Operations for the Defendant and/or his manager Becker, Chief Executive Officer, Division of Human Resources, and even though I had a Permanent Resident Card there was no way to hired me within the Defendant, because the Immigration Code blocked me in the Defendant's system.
>
> Therefore, no matter that although Ms. Miller and any another person within the Defendant wanted to hire me they won't be able to hire me due to the Immigration Code, because the Immigration Code prevented me to be hired in any category even as a personnel of cleaning within the Defendant, because with that code I was placed in the black list.

18

38. Also on November, 2006 I applied online for an attendance teacher position within the Region 9, in the Bronx and I did not get any positive result.

39. Because of these problems obtaining employment within the Defendant, during November, December 2006 and January 2007, I continued to discuss my eligibility to work with the Human Resources Personnel at the Defendant. I was told by the Defendant personnel that the Immigration code would not be removed from my file and that no changes would be made. On January 25th, 2007; again the Respondent issues a letter indicating that: "Mr. Lima was terminated because of Immigration on 07/01/2006" (*Exhibit* A-25).

40. I was seeking a Master in Bilingual Education (*Exhibit* A-26), at Pedro Henriquez Ureña National University and unfortunately I stopped because I could not continue paying it, thanks to the Defendant.

41. Desperate for work, on or around January of 2007, I applied for a job as a Customer Services Representative with Danay's Enterprises & Travel, a travel agency. I was offered the job, but when the agency called the Defendant for reference about me, the agency was told that I had been fired from the Defendant because of problems with Immigration. Ms. Maria Cuervo, the Danay's Enterprises & Travel Supervisor, told me about this result (*Exhibit* A-27), she indicated that because of what the Defendant told her about my separation from employment there, she was unsure about to hire me or not and that she would call me if she could hire me, and she did not contact me. As a result of the code in my file indicating that I was fired from the Defendant because of immigration problems, I have been unable to obtain either permanent or temporary employment within the Defendant despite having a Permanent Resident Card and a current Certification as a School Attendance Teacher. The code has also prevented me from obtaining work in the private sector.

42. On January, 2007 I tried to meet with Becker, due to on October 17th, 2006 he ordered to Ianiello to remove the Code from the Defendant's system and remove me from the Defendant's Ineligible/Inquiry List. On that time unfortunately Becker's and his assistant the lady named Dayana, on that time, totally refused to assist me.

43. On January 24th, 2007 I filed a grievant with the UFT, claiming the days that I worked with the Defendant during the summer of 2006 at I.S. 90 (*Exhibit* A-28), but the UFT stated that they couldn't help with the Immigration Code placed in my file and they could try but they couldn't do so much. I was claiming all of the days I worked, but the Defendant just paid

me on February 20th, 2007 the amount of $652.39, which was the equivalent of a few days of work (*Exhibit* A-29). By those days the Immigration Code was removed from the Defendant system and latter on the Defendant, specifically Ianiello, placed the Code back to the Defendant's system again.

44. I went in person to the Defendant and asked to Amerdi why the Immigration Code was placed again in my file? And roughly she stated that the Immigration Code was removed from my file just for payroll purposes, but the Defendant won't never remove the Immigration Code, because that's the only way that they make sure that nobody within the Defendant could hire me, because I was hired for teaching math no for anything else, and I don't have the math license requirement and the best I can do it to go back to my country. Also Amerdi stated that the Defendant brought me from my country to U.S. to teach math and now I want to remain here. But I came to U.S. by myself on June 2001 with my own visa, and I stated working for the Defendant on April 2003 with my own EAC. Furthermore the Defendant started to sponsor me with the H1B Visa on August 2003. So that lady and the Defendant were totally wrong.

45. On February 27th, 2007 I stopped in the Emergency Room (*Exhibit* A-30), at the Lincoln Medical & Mental Health Center, the reason was that I was very depressed because of thinking about the problem with the Defendant and I started drinking a lot alcohol desperately to see if I was able to forget what the Defendant was doing me. My life was becoming a disaster: I couldn't slept at night, sometimes I ate a lot at night and sometimes I didn't even ate during all day, it was impossible for me to get a job within the Defendant and in the private sector, due to the Immigration Code and the intentional wrongful references that the Defendant was providing about me. I was falling in depression upon seeing so much injustice, abuse and cruelty by the Defendant.

46. During January, February and March of 2007 I continued trying to see if the Defendant pitied to remove the Immigration Code from their system. Again I contact the Union, to see if they could help me to force the Defendant to remove the code, and again the Union refused to assist me.

47. Also at the same time during January, February and March of 2007 I continued trying looking for a job in private schools, some of them replied me a letter letting me know that they were not hiring on that time (*Exhibit* A-31), it was impossible for me, because those schools used to ask me during the interview about my previous employment experience and

when they asked me if they could contact the Defendant for references: when I said NO, they found it weird; and when I said YES must probably the Defendant stated the same that they said to Danay's Enterprises & Travel about me in terms of my job termination.

48. On March 14th, 2007 I was admitted to a Outpatient Mental Health Clinic (*Exhibit* A-32), I couldn't take it no more, I needed a lot of help, I stated taking counseling, I saw the psychiatrist, and I was taking medication: an antidepressant (*Exhibit* A-33). Those months were horrible for me, they were the worst months of my whole life, and sometimes I just wanted to disappear of this world. I can't even express the way I felt by those months, but it was exasperating, the worse thing of the worse thing. I haven't recovered 100% yet, but I'm trying my best, but nowadays still haven't been easy for me.

49. On February, 2007, I filled a complaint with U.S. Department of Justice, Civil Rights Division, Office of Special Counsel for Immigration Related, Unfair Employment Practices (*Exhibit* A-34). Them on April, 2007 when the Defendant, specifically Ianiello, knew that there was a Complaint filled, what Ianiello did was to remove the Code from the Defendant's system immediately to avoid problems.

50. On Tuesday April 3rd, 2007, at 12:22 PM, in an email send to Mr. William Nelson with cc to: Mr. Andrew Gordon and Mr. Ruben Rosa (*Exhibit* A-35) Ianiello stated:

> *Mr. Lima is currently on the ineligible list for immigration issues. He is coded as a DIM. During the end of his employment, after we terminated him, he secured a green card, however, he failed to meet certification requirements in math and we terminated him with the DIM. He also did not get certification in the area that we hired him for which was math. He then got a certification as an attendance teacher.*
>
> *We need to remove the DIM, take him off the ineligible list and allow him to seek employment as an attendance teacher. Both the union and the Civil Liberties attorney are on my case about this*

*and I already conferred with Larry who agrees on*
*this action.*

*His ssn is \*\*\*-\*\*\*-\*\*\*\* and his current file # is*
*992979.*

*Thanks*

Then the same day at 12:34 PM, what Mr. William Nelson replied Ianiello asking him:

*What shall be my termination reason if not DIM?*

And at 12:37 PM Ianiello replied to Mr. William Nelson saying him:

*DQS*

It's more than obvious that, Ianiello recognized since the very beginning that he should order to terminate me base on DQS no in DIM. Moreover he recognized that I failed to meet certification requirements in math and the Defendant terminated base on problems with immigration.

51. Also the Defendant knew that I didn't have any problem with Immigration, because by the time that I was terminated by the Defendant I had and EAC, pursuant to my adjustment of status application, valid from May 25th, 2006 to May 24th, 2007 and besides my H1B Visa extension was approved for the period 2006 to 2009.

52. Anyhow supposing that by the time I was terminated by the Defendant I didn't have the EAC and the H1B Visa couldn't be approved, the problem with Immigration was supposed to be the consequence of my job termination not the cause of my job termination. Also the first H1B Visa expired on August 3rd, 2006 and I was terminated on July 1st, 2006, meaning that however my legal status with the H1B Visa still valid by the time that the Defendant terminated me.

53. Those are clear evidences of Document Abuse, intentional wrongful job termination, job discrimination, etc. It's more than obvious that the Immigration Code was placed in my file on purpose by the Defendant, and when the Defendant knew that there was a Government Agency involved in this case, then the Defendant removed the Immigration Code from my file, if not the Defendant wouldn't never remove the Code from my file like I was told before by the Defendant. Also the Defendant should place on my file since the beginning

22

*DQS* code, which means *Fail to Meet State Requirements For* (*Exhibit* A-36); instead of changing the Code when they knew that there was a complaint in the U.S. Department of Justice.

54. On June 17th, 2007 at 12:04 PM, Ms. Katherine G. Rodi, the Defendant's Senior Counsel, Office of Legal Services, send an email, (*Exhibit* A-37), to Ianiello and Mr. Andrew Gordon, with cc to Robin Greenfield and Devra Nemrow. In that email Ms. Rodi stated:

> *Andy and Peter,*
>
> *Here is our position statement for the Jose Lima case. It has to go out tomorrow. Please review and let me know if this captures what happened.*
>
> *I will be in a conference all day tomorrow (Monday) but my law clerk, Devra Nemrow, will be reviewing emails for me. If you send your comments tomorrow, please be sure to cc: Devra on the email.*
>
> *Thank you for your assistance in this case. Happy Father's Day!*
>
> *Kathy Rodi*

The next day, June 18th at 8:13 AM, Ianiello replied to Ms. Katherine and Andrew Gordon, with cc to Robin Greenfield and Devra Gordon stating:

> *Just some minor changes in red/*

The following day, June 19th at 2:37 PM, Ms. Katherine Rodi, replied to Ianiello stating:

> *Thanks again for your assistance- this went out yesterday and arrived this morning, on time.*

On Tuesday June 19th, at 5:17 PM, Ianiello replied to Ms. Katherine stating:

> *can I get a copy for my files. There are similar*
> *complaints filed with EEO, and Human Rights as*
> *well.*

The same day at 5:21 PM, Ms. Katherine forwards this email to Devra Nemrow stating:

> *Can you send him a copy of the final product?*
>
> *Also, can you send me a copy of it so I can put in*
> *my digital file? And print one out so I can put it in*
> *the paper file. Thanks*

A few minutes later at 5:23 PM, Ms. Devra Nemrow, replied to Ms. Katherine with cc to Ianiello, but she just replied but didn't say anything in the email. Finally 2 minutes later at 5:25 PM Ianiello, forward this email to Mr. Ruben Rosa stating:

> *Please print and file with Jose Lima file with*
> *Lucille.*

55. That means that before the Defendant submit the statement to the Court in response to this case, the Defendant allows Ianiello to review, to add, to remove to state whatever he wants in the statements, instead of state what really, really happened. That's horrible. Those emails prove that this unlawful discriminatory action has been committed by the Defendant conscious and intentionally, and obviously the Defendant use to do that to employees, because clearly Ianiello stated in this email that there are similar complaints filed with EEO, and Human Rights as well. So I'm not the only one, and that wasn't the first time that Ianiello and the Defendant commit this great abuse.

56. Moreover in another email send by Ianiello to Felicia Ramirez and others, on November 6, 2009, (*Exhibit* A-60) Ianiello stated that I was terminated based on immigration and I wasn't eligible for a visa. Also in the same email Felicia Ramirez stated that I was placed on the ineligible list by Ianiello's International Office and I was terminated to failure to complete certification requirements and because I was an international teacher that office placed me on the ineligible list.

57. The following is a list of some cases that the Defendant has had in this Court, in which the Defendant is involved in violating the Employee Civil Right, diversity injures, discrimination based on color, religion, national Origen, etc:

| | | | | |
|---|---|---|---|---|
| 02 | CV | 01689 | LAP | |
| 03 | CV | 02034 | LAP | |
| 03 | CV | 03849 | SHS | |
| 03 | CV | 04425 | RMB | |
| 03 | CV | 04548 | NRB | |
| 03 | CV | 08519 | JGK | |
| 03 | CV | 09299 | PKC | |
| 03 | CV | 09300 | PKC | |
| 03 | CV | 09558 | AKH | |
| 03 | CV | 10153 | PKC | |
| 04 | CV | 04049 | CBM | |
| 04 | CV | 04521 | GBD | |
| 04 | CV | 04642 | HB | RLE |
| 04 | CV | 05632 | LAK | |
| 04 | CV | 05861 | NRB | |
| 04 | CV | 06736 | PKC | |
| 04 | CV | 07289 | THK | |
| 04 | CV | 07450 | PAC | |
| 04 | CV | 07959 | | |
| 05 | CV | 00825 | JSR | HBP |
| 05 | CV | 02804 | GEL | MHD |
| 05 | CV | 03152 | CBM | |
| 05 | CV | 03239 | DAB | |
| 05 | CV | 04880 | DAB | |
| 05 | CV | 05271 | WHP | |
| 05 | CV | 06202 | GBD | THK |
| 05 | CV | 07260 | GBD | |
| 05 | CV | 07945 | SHS | |
| 05 | CV | 07954 | LTS | DCF |
| 05 | CV | 08233 | JGK | |
| 05 | CV | 09248 | RJH | |
| 05 | CV | 09353 | DLC | |
| 06 | CV | 01836 | HBP | |
| 06 | CV | 05259 | RMB | GWG |
| 06 | CV | 06974 | VM | HBP |
| 06 | CV | 08280 | RJH | |
| 06 | CV | 08306 | BSJ | HBP |
| 06 | CV | 14220 | JSR | |
| 07 | CV | 00145 | DAB | |
| 07 | CV | 04544 | PAC | DCF |
| 07 | CV | 05797 | SHS | |
| 07 | CV | 10444 | SHS | |
| 07 | CV | 11214 | SAS | JCF |